REC'D & FILED

2026 APR 28  PM 4: 21

WILLIAM SCOTT HOEN
CLERK
BY _____
DEPUTY

# IN THE FIRST JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

## IN AND FOR CARSON CITY

STATE OF NEVADA ex rel. NEVADA GAMING CONTROL BOARD,

    Plaintiff,

vs.

KALSHIEX, LLC,

    Defendant.

Case No. 26 OC 00050 1B

Dept. No. I

## ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

This matter having come before the Court for a hearing on April 3, 2026 on Plaintiff, STATE OF NEVADA ex rel. NEVADA GAMING CONTROL BOARD's ("BOARD") Complaint for Permanent Injunction and Declaratory Relief and its Renewed Motion for Preliminary Injunction filed by the BOARD on March 12, 2026. Jessica E. Whelan, Chief Deputy Solicitor General—Litigation, Nevada Office of the Attorney General, appeared on behalf of the BOARD and Grant R. Mainland of Millbank LLP appeared on behalf of Defendant KALSHIEX, LLC ("KALSHI").

On March 20, 2026, this Court granted the BOARD's Renewed Ex Parte Application for Temporary Restraining Order and issued a Temporary Restraining Order prohibiting KALSHI from offering or facilitating the offering of sports-, election-, and entertainment-related event contracts in Nevada for a period of 14 days from the date of the order. The Court subsequently extended the Temporary Restraining Order for an additional period of 14 days at the April 3 hearing.

The Court, having reviewed the pleadings and papers on file and having considered the oral arguments of counsel, hereby **FINDS** and **CONCLUDES** as follows:

The BOARD seeks to preliminarily restrain and enjoin KALSHI and any of its agents, employees, officers, or affiliates from operating a derivatives exchange and prediction market that offers event-based contracts relating to sports, elections, and entertainment events to people within Nevada without obtaining all required Nevada gaming licenses, and from allowing its market to accept wagers from persons under the age of 21.

Under Nevada law, a preliminary injunction is authorized when it "appear[s] by the complaint that the plaintiff is entitled to the relief demanded"; the relief involves "restraining the commission or continuance of the act complained of" (NRS 33.010(1)); and when "the commission or continuance of some act . . . would produce great or irreparable injury to the plaintiff." NRS 33.010(2); *Posner v. U.S. Bank N.A.*, 140 Nev. Adv. Op. 22, 545 P.3d 1150, 1152 (Nev. 2024) (holding injunctive relief is "'proper where the moving party can demonstrate that it has a reasonable likelihood of success on the merits and that, absent [such relief], it will suffer irreparable harm for which compensatory damages would not suffice.'" (quoting *Excellence Cmty. Mgmt., LLC v. Gilmore*, 131 Nev. 347, 351, 351 P.3d 720, 722 (2015)).

In addition, the balance of hardships and public interest may be considered in determining whether injunctive relief is warranted and, if so, the scope and nature of that relief. *University & Cmty. College Sys. of Nev. v. Nevadans for Sound Gov't*, 120 Nev. 712, 721, 100 P.3d 179, 187 (2004).

## I.    The BOARD is reasonably likely to prevail on the merits of the underlying case

As a threshold matter, the BOARD has demonstrated that it has a "reasonable likelihood of success on the merits."

**First**, the Complaint (Compl., pp. 2–3) and Renewed Motion for Preliminary Injunction (Mot., pp. 1–2) establish that gaming in Nevada is expansively and strictly regulated. The BOARD, in conjunction with the Nevada Gaming Commission, has virtually comprehensive statutory authority over gaming in Nevada. *See generally* Nev. Rev. Stat. ch. 463. The strict regulation of gaming promotes the public interest in several respects, including the prevention of underage gambling, preservation of the integrity of the events which are the subject of gaming wagers, and exclusion of unsuitable individuals from gaming activities. NRS 463.166, .350, *Nev. Gam'g Comm. Reg.* 22.1205(2). Gaming in Nevada may only be conducted by an entity licensed under the authority of the Nevada Gaming Control Act. NRS 463.160.

**Second,** "gaming" as used in Nevada law includes a "percentage game," and a "wager" in a "sports pool." NRS 493.0152, .0193, .01962. "Percentage games are . . . games where patrons wager against each other and the house takes a percentage of each wager as a 'rake-off.'" *Hughes Props. v. State*, 100 Nev. 295, 297, 680 P.2d 970, 971 (1984). A "wager" is "a sum of money or representative of value that is risked on an occurrence for which the outcome is uncertain." NRS 463.01962. And a "sports pool" is "the business of accepting wagers on sporting events or other events by any system or method of wagering." NRS 463.0193.

**Third,** the record at this early stage in the proceedings indicates KALSHI is not licensed under the Nevada Gaming Control Act. KALSHI does not dispute this finding.

**Fourth,** the record at this early stage in the proceedings indicates KALSHI offers "event-based contracts," including college basketball games, college and professional football games and elections. KALSHI does not dispute this finding.

Under Nevada law, this conduct constitutes the operation of a "sports pool" as it involves the acceptance of "wagers" concerning "sporting events or other events" "for which the outcome is uncertain." Further, the record indicates KALSHI takes a commission on contracts purchased through its system, meaning it is operating a "percentage game" as defined in Nevada law.

**Finally,** the Court has considered KALSHI's contentions that it operates a CFTC-registered exchange that lists event contracts for trading; that Nevada gaming laws are preempted with respect to the event contracts offered on a federally regulated exchange; and that the CEA grants the CFTC exclusive jurisdiction to regulate "transactions involving swaps traded or executed on a [federally designated] contract market." 7 U.S.C. §2(a)(1)(A).

At the moment, the balance of convincing legal authority weighs against federal preemption in this context. *See KalshiEx, LLC v. Hendrick*, No. 2:25-cv-00575-APG-BNW, 2025 U.S. Dist. LEXIS 234246 at *11–38 (D. Nev. Nov. 24, 2025) [hereinafter referred to as "*KalshiEx*"]; *see also North American Derivatives Ex., Inc. v. Nev. Gaming Control Bd.*, No. 2:25-cv-00978-APG-BNW, 2025 U.S. Dist. LEXIS 466366 (D. Nev. Oct. 14, 2025) (holding contracts based on outcome of sporting events are not "swaps" under the Commodity Exchange Act and are not subject to exclusive jurisdiction of CFTC); *KalshiEx, LLC v. Martin*, No. 25-cv-1283-ABA, 793 F. Supp. 3d 667, 2025 U.S. Dist. LEXIS 147815

(D. Md. Aug. 1, 2025) (holding state law not preempted by Commodity Exchange Act as applied to sports-related event contracts); *Massachusetts v. KalshiEX, LLC*, No. 2584CV02525, 2026 WL 188019 (Super. Ct. Suffolk Cnty., Mass. Jan. 20, 2026) (same). *But see KalshiEx, LLC v. Flaherty*, No. 25-1922, (3d Cir. Apr. 6, 2026) (holding, in a divided panel decision, state law preempted by Commodity Exchange Act as applied to sports-related event contracts); *KalshiEX LLC v. Orgel*, No. 26-cv-00034, 2025 U.S. Dist. LEXIS 33927 (M.D. Tenn. Feb. 19, 2026) (state law likely conflict preempted by the Commodity Exchange Act as applied to sports-related event contracts).

The reasoning in *KalshiEx* and *North American Derivatives* is persuasive. Therefore, this Court concludes that based on the current state of the law, the Commodities Exchange Act, more specifically 7 U.S.C. §2(a)(l)(A), fairly interpreted, does not vest exclusive jurisdiction over KALSHI's event contracts with the CFTC. As such, Nevada law is not preempted, and the BOARD has authority to prosecute the enforcement action presented by the Complaint and the Renewed Motion for Preliminary Injunction.

## II.    The BOARD's injuries are irreparable and non-compensable

KALSHI's wrongful acts cause immediate and irreparable harm to Nevada's "comprehensive regulatory structure" and "strict licensing standards." Such harm is not sufficiently remediable by compensatory damages. The BOARD has a statutory duty to protect the public and advance Nevada's interest in administering a reputable gaming industry with integrity. In furtherance of that duty, the BOARD is obliged to consistently and equitably monitor and enforce regulatory and statutory compliance among all industry participants and protect the health, safety, morals, good order, and general welfare of gaming consumers. An unlicensed participant beyond the BOARD's control, such as KALSHI, obstructs the BOARD's ability to fulfill its statutory functions. For example, the BOARD lacks authority to ensure that wagers are not being accepted by KALSHI from owners, coaches, players or officials who are in a position to influence the outcome of a sporting event. The BOARD also has no means to ensure that individuals under the age of 21 are not allowed to purchase KALSHI's contracts and no ability to enforce any sanction against KALSHI if it determined this to be the case. Additionally, the BOARD has no way to know if unsuitable individuals are involved with KALSHI's activities in Nevada, much less prevent such involvement. By their nature, these injuries cannot be mitigated, much less restored, by compensatory damages after the injury is incurred.

These potential consequences must be characterized as irreparable under Nevada law. As such, they support issuance of a preliminary injunction.

## III.    The balance of hardships and public interest weigh in favor of issuing the preliminary injunction

Largely for the reasons that have already been explained above, the balance of hardships and public interest in maintaining meaningful control over Nevada's gaming industry for the purpose of ensuring its integrity strongly supports issuance of a preliminary injunction. In addition to the harms already discussed, KALSHI's failure to comply with Nevada gaming law gives it a massive and unfair competitive advantage over its competitors, which greatly distorts the playing field and disrupts the gaming industry. All licensed gaming operators must pay taxes, with the revenue financing numerous indispensable state functions. KALSHI threatens that revenue, by evading taxes and diverting business from licensed sports books that pay taxes. The BOARD's and the State's injuries exacerbate with each day that KALSHI operates in Nevada outside the authority of the BOARD. A day means more consumers. More consumers mean more transactions. More transactions means more potential harm to the BOARD and the State. As such, every day matters in this case in a literal sense.

On the other side of the balance, KALSHI does not face irreparable harm from being required to comply with state law as all other sportsbooks do. Any monetary harms KALSHI asserts relating to its compliance are self-inflicted and therefore not irreparable. They are the product of KALSHI's proceeding at its own risk on an untested preemption theory and then dramatically expanding its operations even after a federal district court had rejected this theory. Any such harms in any event pale in comparison to the severe, irreparable harm that KALSHI's unlicensed operations cause to the BOARD and to the State.

## IV.    No security is required

A party who is the beneficiary of a preliminary injunction is typically required to post security for damages resulting from wrongful issuance of the preliminary injunction. NRCP 65(c). However, the BOARD, as an agency of the State of Nevada, is exempted from that typical requirement. *Id.* Therefore, no security will be required.

Therefore, good cause appearing,

**IT IS HEREBY ORDERED** that Plaintiff's Renewed Motion for Preliminary Injunction filed on March 12, 2026 is **GRANTED**. KALSHI is prohibited from offering or facilitating the offering of the following to Nevada residents:

- Sports-related event contracts (i.e., those listed in Kalshi's "Sports" tab on its platform, and sports-related contracts in other portions of its platform), including event contracts involving the outcome of sporting events or any element of any sporting event (i.e., props) or any combination of elements or outcomes of sporting events (i.e., parlays);

- Election-related event contracts (i.e., those listed in Kalshi's "Elections" tab on its platform); and

- Entertainment-related event contracts (i.e., those listed in Kalshi's "Culture" tab on its platform).

KALSHI will have until May 4, 2026 to make technological enhancements necessary to comply with the terms of this order. Until that date, KALSHI will prevent users identified as Nevada residents from entering the sports-, election-, and entertainment-related contracts identified above. If KALSHI determines that compliance by May 4, 2026 is not possible, it may request an extension. Any request for an extension shall include an explanation, supported by sworn declaration, of the degree to which geolocation or geofencing measures have been implemented, the progress which has been made in regard to any implementation that has not yet been completed, the remaining tasks to be completed, and an estimate of the extent to which the geolocation or geofencing measures have been implemented.

**IT IS SO ORDERED.**

Dated this _____ day of April, 2026

JASON D. WOODBURY
DISTRICT JUDGE

## CERTIFICATE OF SERVICE

Pursuant to NRCP 5(b), I certify that I am an employee of the First Judicial District Court, and that on April 29, 2026, I deposited for mailing, postage paid, at Carson City, Nevada, a true and correct copy of the foregoing Order addressed as follows:

Aaron D. Ford, Attorney General
Jessica E. Whelan,
  Chief Deputy Solicitor General
Sabrena K. Clinton,
  Senior Deputy Attorney General
John S. Michela,
  Senior Deputy Attorney General
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV  89119

John K. Gallagher
GUILD, GALLAGHER & FULLER LTD.
100 West Liberty Street, Suite 800
Reno, NV  89501

Dennis L. Kennedy, Esq.
Paul C. Williams, Esq.
BAILEY KENNEDY
8984 Spanish Ridge Avenue
Las Vegas, NV  89148-1302

Julie Harkleroad
Judicial Assistant, Dept. 1