

# Milbank

**ANDREW PORTER**

*Partner*

55 Hudson Yards  |  New York, NY 10001-2163
T: +1 (212) 530-5361
APorter@milbank.com  |  milbank.com

June 25, 2026

**VIA ECF**

The Honorable Analisa Torres
United States District Court, Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007-1312

> Re:    *KalshiEX LLC v. Williams*, No. 25-cv-08846-AT
> Response to Defendants' Notices of Supplemental Authority (ECF Nos. 102, 103)

Dear Judge Torres:

Plaintiff KalshiEX LLC ("Kalshi") respectfully submits this response to Defendants' Notices of Supplemental Authority.  (ECF Nos. 102, 103, "Notices").  Through those Notices, Defendants identify two post-submission orders from the U.S. District Court for the Western District of Michigan: Opinion & Order, *QCX, LLC v. Nessel*, No. 1:26-cv-710 (W.D. Mich. June 17, 2026), Dkt. No. 41 ("*QCX* Order"), and Opinion & Order, *Robinhood Derivatives, LLC v. Nessel*, No. 1:26-cv-730 (W.D. Mich. June 17, 2026), Dkt. No. 39 ("*Robinhood* Order").  Neither order supports denial of Kalshi's Motion for a Preliminary Injunction (ECF No. 16, the "Motion") or dismissal of Kalshi's case.

*First*, the Western District of Michigan is mistaken that Kalshi's reading renders "associated with" meaningless.  Kalshi does not contend *any* event can underlie a swap; an event must be connected to possible financial consequences, subject to ordinary principles of causation.  Kalshi's contracts are swaps because outcomes of sports events carry potential financial consequences for various stakeholders.  Pl.'s Reply in Supp. of its Mot. for Prelim. Inj. at 1-2, ECF No. 76 ("Reply").  And "consumer and commercial transactions" that "are not traded on an organized market or over-the-counter" also are not swaps.  Further Definition of "Swap," 77 Fed. Reg. 48208, 48247 (Aug. 13, 2012).

*Second*, the Michigan court wrongly concluded that Section 2(a) is not an express-preemption provision, in part because it does not use words like "supersede" or "preempt." *See Robinhood* Order at 24-25; *QCX* Order at 23-24.  But Congress commonly preempts state law by granting federal authorities exclusive jurisdiction.  Motion 11-12; Reply 5 (citing cases).  And in any event, Section 2(a) "supersede[s]" and "limit[s]" state regulatory jurisdiction over on-DCM transactions.  7 U.S.C. § 2(a)(1)(A).

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | HONG KONG | SEOUL | SINGAPORE | TOKYO

The Honorable Analisa Torres
June 25, 2026
Page 2

*Third*, the Michigan court wrongly relied on certain CEA provisions to hold that the CFTC's exclusive jurisdiction "is not actually so exclusive." *Robinhood* Order at 27; *QCX* Order at 27. But Section 13a-2(1) forbids states from suing DCMs. Section 2(a)'s savings clause preserves state authority only as to off-DCM transactions. And general state antifraud statutes, *see* 7 U.S.C. § 13a-2(7), and contract law do not contravene the CFTC's exclusive jurisdiction because they do not "directly affect trading on or the operation of a futures market." *Am. Agric. Movement, Inc. v. Bd. of Trade of Chi.*, 977 F.2d 1147, 1156-57 (7th Cir. 1992). Motion 16-17; Reply 6-7.

*Fourth*, the Michigan court failed to explain how Kalshi could comply with state-by-state geographic restrictions while providing "impartial access" to its exchange. 17 C.F.R. § 38.151(b); Motion 18-19; Reply 7-8. The court noted that a DCM can adopt "fee structures" that treat a category of market participants differently if "reasonably related to the cost of providing access . . . to a particular category." *QCX* Order at 28. But that Kalshi could charge fees based on "information technology or administrative expenses" does not remotely suggest DCMs can ban users based on geography. Core Principles, 75 Fed. Reg. 80572, 80579 (Dec. 22, 2010).

*Fifth*, contrary to the Michigan court's conclusions, the Special Rule, 7 U.S.C. § 7a-2(c)(5)(C)(i)(I), does not contemplate markets "segmented by state." The Special Rule instead gives the CFTC—and the CFTC alone—discretion to permit or prohibit event contracts that involve activity that is unlawful under state law. Motion 5-6; Reply 8-9.

*Sixth*, Kalshi stands to suffer irreparable injury. The Michigan court's irreparable harm analysis relied on its determination that "the application of Michigan law against [Kalshi] would [not] be unconstitutional." *See Robinhood* Order at 31-32; *QCX* Order at 32-33. But Kalshi is likely to succeed on the merits, and the credible threat of criminal enforcement of a preempted statute is itself irreparable harm. Motion 20; Reply 9-11.

*    *    *

For these reasons, neither the *QCX* Order nor the *Robinhood* Order supports denial of Kalshi's Motion.

Respectfully submitted,

*/s/ Andrew L. Porter*
Andrew L. Porter

cc:  All Counsel of Record (via ECF)