

# Milbank

## GRANT MAINLAND

*Partner*

55 Hudson Yards  |  New York, NY 10001-2163
T: +1 (212) 530-5251
GMainland@milbank.com  |  milbank.com

July 15, 2026

**VIA ECF AND EMAIL**
The Honorable Analisa Torres
United States District Court, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

   Re: *KalshiEX LLC v. Williams*, No. 25-cv-08846-AT

Dear Judge Torres:

  Pursuant to Rule III(A) of Your Honor's Individual Practices in Civil Cases, Plaintiff KalshiEX LLC ("Kalshi") respectfully submits this letter motion concerning its anticipated motion for an emergency injunction pending appeal from this Court's Opinion and Order denying Kalshi's motion for a preliminary injunction, Dkt. No. 106, and, in the alternative, for short-term administrative relief pending the Second Circuit's resolution of Kalshi's forthcoming motion for an injunction pending appeal.  Kalshi has appealed this Court's decision and now seeks interim relief to preserve the status quo during that appeal.[1]

  This case presents complex legal questions that have divided courts across the country regarding whether the Commodity Exchange Act ("CEA") preempts state enforcement of gambling laws against designated contract markets ("DCMs").  As this Court noted, the only court of appeals to have reached the question ruled in Kalshi's favor, with the Third Circuit holding that the CEA "preempts state gambling laws that seek to regulate futures trading, *i.e.*, Kalshi's sports-related event contracts traded on a DCM under the exclusive jurisdiction of the CFTC." *KalshiEX, LLC v. Flaherty*, 172 F.4th 220, 230 (3d Cir. 2026).  In this Circuit, a movant for an injunction pending appeal "need not always show a probability of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and

---

[1] The Parties have met and conferred about this request.  Defendants intend to oppose this motion, but have agreed not to bring an enforcement action against Kalshi under New York law while Kalshi seeks this relief, up to and including July 30, 2026.  If this Court does not grant Kalshi relief, Kalshi intends to seek an injunction pending appeal from the Second Circuit.  To ensure that the Second Circuit has time to consider Kalshi's request by the time Defendants' nonenforcement agreement lapses after July 30, 2026, Kalshi intends to seek an injunction pending appeal from the Second Circuit on July 23, 2026 if this Court has not granted Kalshi relief before then.

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | HONG KONG | SEOUL | SINGAPORE | TOKYO

The Honorable Analisa Torres
July 15, 2026
Page 2

show that the balance of the equities weighs heavily in favor of granting the stay." *LaRouche v. Kezer*, 20 F.3d 68, 72-73 (2d Cir. 1994) (citation modified).  Kalshi readily satisfies that standard.

**At Minimum, Kalshi's Appeal Raises Serious Questions That Have Divided The Courts.**  Whether the CEA preempts state regulation of prediction markets is a question of first impression in the Second Circuit.  The District of New Jersey and Third Circuit sided with Kalshi in *Flaherty*; the Middle District of Tennessee granted Kalshi a preliminary injunction in a materially identical case; and the District of Arizona granted a preliminary injunction barring state enforcement of similar gaming laws.  *Flaherty*, 172 F.4th at 231-32; *KalshiEX LLC v. Orgel*, 2026 WL 474869, at *7 (M.D. Tenn. Feb. 19, 2026); *KalshiEX LLC v. Johnson*, 2026 WL 1223373, at *2 (D. Ariz. May 5, 2026).  The United States and CFTC agree that the CEA preempts state regulation of DCMs and have sued multiple States—including New York—to prevent them from applying gambling laws to sports-event contracts on DCMs.  Their suit against New York is now pending before Judge Marrero in this District.  *See* Compl. ¶ 1, *United States v. New York*, No. 26-cv-3404 (S.D.N.Y. Apr. 24, 2026), Dkt. No. 1 (Marrero, J.).[2]  Against that backdrop, an injunction pending appeal is appropriate to maintain the status quo until the legal issues can be resolved.

Further, there are aspects of this Court's decision with which the Second Circuit may disagree.  *First*, the Court relied upon a presumption against preemption, even though the CEA contains an express preemption clause (Op. at 10-11).  The Supreme Court has held that where a "statute contains an express pre-emption clause, [courts] do not invoke any presumption against pre-emption but instead focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (citation modified); *see Buono v. Tyco Fire Prods., LP*, 78 F.4th 490, 495 (2d Cir. 2023) (same).  This precedent is especially significant because this Court lacked the benefit of the CFTC's views on preemption during briefing, but the agency has now made clear that the CEA "expressly preempts state laws" with respect to event contracts on DCMs.  *See* Prediction Markets; Public Interest Determinations, 91 Fed. Reg. 35,806, 35,808 (June 12, 2026).[3]

*Second*, the Second Circuit may disagree with the Court's interpretation of the CFTC's exclusive jurisdiction.  Congress granted the CFTC "exclusive jurisdiction" over transactions,

---

[2] *See also* Compl., *United States v. Arizona*, No. 26-cv-2246 (D. Ariz. Apr. 2, 2026), Dkt. No. 1; Compl., *United States v. Connecticut*, No. 26-cv-498 (D. Conn. Apr. 2, 2026), Dkt. No. 1; Compl., *United States v. Illinois*, No. 26-cv-3659 (N.D. Ill. Apr. 2, 2026), Dkt. No. 1; Compl., *United States v. Wisconsin*, No. 26-cv-749 (E.D. Wis. Apr. 28, 2026), Dkt. No. 1; Compl., *United States v. New Mexico*, No. 26-cv-1912 (D.N.M. June 12, 2026), Dkt. No. 1; Compl., *United States v. Kentucky*, No. 26-cv-49 (E.D. Ky. June 23, 2026), Dkt. No. 1; Intervenor Compl., *KalshiEX LLC v. Furcolo*, No. 26-cv-327 (D.R.I. June 26, 2026), Dkt. No. 37.

[3] The Second Circuit may also determine that no presumption against preemption applies here because derivatives trading on DCMs is an area "where there has been a history of significant federal presence." *N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010) (citation omitted); *see Churchill Downs Tech. Initiatives Co. v. Mich. Gambling Control Bd.*, 162 F.4th 631, 641 n.5 (6th Cir. 2025) (presumption did not apply because "regulation of interstate gambling isn't a traditional area of state regulation").

The Honorable Analisa Torres
July 15, 2026
Page 3

including in "future[s]" and "swaps," traded on DCMs. 7 U.S.C. § 2(a)(1)(A). The Court "assume[d]" (Op. at 11) that Kalshi's contracts are swaps and acknowledged that "it is clear from the CEA's text that Congress intended for the CFTC to have exclusive jurisdiction over swap transactions on DCMs." But if Kalshi's contracts are swaps, and if the CFTC has exclusive jurisdiction over swaps, the text compels preemption: The "plain meaning of 'exclusive'" "necessarily denies jurisdiction" to entities not named in the provision. *Mississippi v. Louisiana*, 506 U.S. 73, 77-78 (1992); *see Leist v. Simplot*, 638 F.2d 283, 322 (2d Cir. 1980) (CEA "preempts the application of state law" regarding trading on federal exchanges). The Second Circuit could conclude that there is no basis to exempt state gambling laws from the CEA's preemptive scope, because the plain text makes the CFTC's jurisdiction over trading on DCMs exclusive regardless of the type of state regulation at issue. Indeed, dozens of states a century ago barred all derivatives trading as "gambling in grain futures." *Dickson v. Uhlmann Grain Co.*, 288 U.S. 188, 198 (1933). The Second Circuit could thus deem it especially unlikely that Congress silently intended to create a state-gambling-law exception to the CFTC's exclusive jurisdiction over trading on DCMs.

*Third*, regarding field preemption, the Second Circuit could conclude that this Court overlooked the proviso preceding the CEA's savings clause, which provides that state law is not superseded only "[e]xcept as hereinabove provided," *i.e.*, by the grant of exclusive jurisdiction over on-DCM transactions. 7 U.S.C. § 2(a)(1)(A); *see* H.R. Rep. No. 93-1383, at 35 (1974) (Conf. Rep.); *Flaherty*, 172 F.4th at 230-31. The Second Circuit could also conclude that the Special Rule's reference to "[e]vent contracts" involving "gaming" as a type of "swap" is clear textual evidence that Congress understood contracts like Kalshi's sports-event contracts to fall within the CFTC's exclusive jurisdiction, subject to the CFTC's discretion to prohibit them only if they are "contrary to the public interest"—a determination the CFTC has made in Kalshi's favor. 7 U.S.C. § 7a-2(c)(5)(C)(i); 91 Fed. Reg. at 35,807-08. Indeed, the Second Circuit could conclude that this Court's recognition (Op. at 18) that the "CFTC holds the authority to determine whether a contract is legal" proves preemption, because the CFTC *has* determined that Kalshi's contracts are legal.

*Fourth*, regarding conflict preemption, the Second Circuit could disagree with the Court's view (Op. at 15-19) that Kalshi can comply with both regimes. New York requires licensees to accept only in-state trades, N.Y. Rac. Pari-Mut. Wag. & Breed. Law § 1367(1)(b), while the CEA requires a DCM to provide "impartial access" to eligible participants nationwide, 17 C.F.R. § 38.151(b). If Kalshi were required to match only New York traders, it would fragment a single nationwide market into fifty liquidity pools with different prices for identical contracts—a result antithetical to the impartial-access requirement and the CEA, as the CFTC itself has confirmed. *See* 7 U.S.C. § 5 (the CEA seeks to "serve the public interest[]" by regulating transactions that "are entered into regularly in interstate and international commerce" under CFTC "oversight").

**Kalshi Faces Irreparable Harm Absent Relief.** Immediate compliance with Defendants' cease-and-desist demand is not possible (Dkt. No. 1 ¶ 48; Dkt. No. 17-1 at 3, 5). Thus, Kalshi's only means of compliance during the appeal would be to terminate trading for hundreds of thousands of New York users, many of whom have open investments on the platform. Dkt. No. 18 ¶ 24. Compliance would therefore confront Kalshi with a "Hobson's choice" of violating New

The Honorable Analisa Torres
July 15, 2026
Page 4

York law and exposing itself to potentially huge liability, or violating the CFTC's order and risking its federal registration. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992); *see Cooper v. Town of East Hampton*, 83 F.3d 31, 36 (2d Cir. 1996).

The CFTC has emphasized that a DCM "cannot fulfill its federal mandate" if it complies with state-by-state restrictions, so New York compliance would bring Kalshi out of federal compliance and jeopardize its status as a CFTC-approved DCM, subjecting it to economic and reputational harm. CFTC Amicus Br. at 26-27, *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir. Feb. 17, 2026), Dkt. No. 38.2; *Flaherty*, 172 F.4th at 232. And just yesterday, the CFTC issued an order alleging that Kalshi violated federal law by complying with a state court order to refund open trades. The order explained that "State courts cannot order the unwinding of executed swap transactions" that are subject to the CFTC's "exclusive jurisdiction."[4] This order exemplifies the Hobson's choice created by state regulation, requiring Kalshi either to comply with state law even though it violates a federal order, or else comply with federal law and face criminal liability or contempt proceedings in state court—all of this as the Second Circuit evaluates whether those state laws are preempted.[5]

**The Remaining Equitable Factors Favor Relief.** The balance of equities and the public interest favor an injunction pending appeal. As the *Orgel* court recognized, "enjoining the enforcement of a law that violates constitutional rights is always in the public interest," and the State faces no cognizable harm from being enjoined from enforcement that is likely preempted. *Orgel*, 2026 WL 474869, at *11 (citation modified); *see also Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467, 500 (S.D.N.Y. 2019) (same). Kalshi will remain regulated in the interim; the question in this case is not whether Kalshi should be regulated, but by whom. Congress's judgment was that regulation must come from the CFTC rather than a patchwork of fifty States. New York, for its part, will not lose its ability to regulate gambling. Instead, the status quo would persist, and there is no evidence that a brief injunction pending an expedited Second Circuit appeal would harm New York's gaming industry or the public. *See Churchill Downs*, 162 F.4th at 642-43.

For the foregoing reasons, Kalshi respectfully requests that the Court grant an injunction pending appeal, or in the alternative, grant Kalshi administrative relief pending the Court's consideration of full briefing on Kalshi's motion. *See United States v. Texas*, 144 S. Ct. 797, 798-99 (2024) (Barrett, J., concurring).

---

[4] Order Staying Emergency Rule Filed by KalshiEX LLC and Directing Kalshi to Fulfill Open Trades Involving Michigan Residents, *In re Matter of KalshiEX LLC's Notice Regarding Market Emergency Declaration and Emergency Rule Filing Pursuant to Commission Regulation 40.6(a)*, CFTC (July 14, 2026), https://www.cftc.gov/filings/documents/2026/orgcftcorderstayingkalem61407.pdf.

[5] The State has already brought enforcement actions against other DCMs under New York laws. *See People v. Gemini Titan, LLC*, No. 451603/2026 (N.Y. Sup. Ct., N.Y. Cnty. Apr. 21, 2026), *removed,* No. 26-cv-03318-VM (S.D.N.Y. Apr. 22, 2026); *People v. Coinbase Fin. Mkts. Inc.*, No. 451604/2026 (N.Y. Sup. Ct., N.Y. Cnty. Apr. 21, 2026), *removed,* No. 26-cv-03300-VM (S.D.N.Y. Apr. 21, 2026).

The Honorable Analisa Torres
July 15, 2026
Page 5

Respectfully submitted,

*/s/ Grant R. Mainland*
Grant R. Mainland

cc:  All Counsel of Record (via ECF and email)